argument is 20-1768, Centripetal Networks vs. Cisco. Mr. Hanna. Thank you, Your Honor. Again, may it please the Court. So with respect to this appeal, this is the 2017-68, we're talking about the 148 patent. And there's no claim construction issue. That was just for the first two, right? There's no claim construction issue with regard to dynamic security policy. That's correct. In terms of what the Board did here is they looked at the word pre-processing and said that, I mean, they looked at post-processing and said that can mean pre-processing. And to want to skill in the art and to aid in laypersons, that simply does not make sense. Here we have two references. We have the Rose reference and we have the Golnabi reference that is relevant to this pre-processing of rule sets. And here the Board did construe pre-processing of the rule sets. And they said that it's performing optimization operations on a first rule set and a second rule set prior to the rule sets being applied to packets. And that's the important part here is that it's prior to the rule sets being applied to packets. Yeah, but maybe to cut this to, I think, where you're going, so you can correct me if I'm wrong, the Rose reference says at any time. So at any time is really broad. And the Board concluded, I think, that any time includes prior to applying rule sets to packets. So is that what you're taking issue with? Well, we've got to be careful here because Rose says at any time you can select policies. It doesn't say that at any time you can optimize rule sets. And that's a big difference here. Just because a reference says the words at any time doesn't mean that you can use now Rose to apply to any prior art reference anywhere in the world and say, okay, now it's at any time. And so we can completely divorce the technology and say, okay, post-processing actually means pre-processing. I don't think that's correct at all. You have to look at the statements in context. And the statements here are that you can select a policy at any time. And Rose is very specific. It's about selecting these policies. It has nothing to do with optimization. And that's why Cisco had to point to Gulnabi. Counsel, your standard of review is pretty steep on the question of what a reference teaches. This is undisputed. It's undisputed that Rose teaches the selection of policies. The board confirmed that again and again. So that's undisputed. Gulnabi is also undisputed. The board specifically says that Gulnabi teaches the post-optimization of rules. They specifically say that you look at the rules, you apply the rules to packets, and then, quote, during packet processing, you're going to try to optimize those rules. So that's also undisputed. It really comes down to this notion that if you look at the post-processing of rules, and this is another quote, this is what the board ruled. We could not agree with patent owner that optimization of rules before the processing of packets and after processing of packets are such different considerations that a person would not have considered such processes useful for optimization at any period. That simply makes no sense. That's why what they're trying to do is fill this limitation in with common sense. They're trying to say, if I had post-processing that I normally, then I would just automatically apply that to pre-processing. And so there's actually, the board is in agreement that Rose discloses selecting of policies, not optimization, and that's where the any time language comes in. It's undisputed that Ganabe teaches post-processing or post-optimization, and it doesn't teach pre-optimization or optimization before applying to packets. And so the question really comes down to is, can the board fill in that limitation with common sense? And the answer is simply no. The case law is very clear. Arendi is very clear here that common sense cannot be used to fill in an element. In addition, that element would have to be simple. Security software is complex, and where the processing happens matters. I mean, if you think about it, if using the Rose and Ganabe system combined, what you're going to have is a system that traffic comes into your network, and it's potentially malicious, and it can infect your network. And then you adjust the rules based on the traffic that comes in to starve off any future attacks. But what the patent is about is not allowing that traffic in in the first place. That's why you have this pre-processing, this optimization before you actually apply the rules, so that I don't get infected at all. I can optimize these rules. I can prevent malicious traffic from entering my network before it even hits it. And that's why this patent and this pre-processing, this pre-optimization is so important and how it's just completely contrary to how Ganabe works. I mean, Ganabe would not work in a pre-processing context because, as your honors know, Ganabe specifically says you have to log, you have to mine this log data. That log data is these packets that are being applied to these rules. There's no way that you could actually have that log data if it wasn't applied to the rules. And then, to your honors' point, you say that, well, Rose says that it can be at any time. Well, if I'm the one that's stealing the art, and I'm looking at Rose, and it says at any time, and then I look at Ganabe, Ganabe says post-processing. That's what I'm thinking. I'm not thinking – I'm thinking what the reference discloses. I'm thinking, okay, I can do this at any – I can do – even if I could do it at any time, but Rose says selecting policies, but I can say, okay, the word's at any time. I look at Ganabe and it says, okay, at any time, you know when you should do it? You should do it after you apply the rules because that's what this system is. That's how they think. Well, that would be anticipation for Ganabe. I mean, I don't understand. I mean, that's what we – when you combine references, you take part of one and part of the other. So if you've got Rose saying at any time, can't you transfer that and combine it with Ganabe, right? No, but your honors, it's at any time I could select a policy. And then at any time I can select a policy, but then the policy can't be optimized. Those rules can't be optimized until after they're applied to packets. That's the combination. That's what the at any time means. It doesn't mean at any time I can do optimization. Rose is completely silent as to optimization. And Ganabe never says that you can do processing, pre-processing of those rules because it wouldn't work. It just simply would not – it just wouldn't work. So at most you'd have a system that says at any time I can select a policy and then optimize my rules. I have to apply it to packets. Okay. Counsel, I think the board found that Rose teaches at a policy, and this is a quote, may be pre-installed, updated, reinstalled, revised, or otherwise changed when and as desired. Correct, but there's nothing about optimization there, your honor. That doesn't talk about optimization. So it says that it can be done as desired, and also the words updating and so forth imply that there's already a policy. Reinstalled, revised, or otherwise changed when and as desired. Right, and so that – okay, so first of all, that has nothing to do about optimization. Well, I think Cisco's expert, Dr. Reddy, he said that those teachings, the one I just pointed out, would inform a procedure that pre-processing could be performed before the rules are applied to data packets. Processing. That was Dr. Reddy's testimony, and again, we have a substantial evidence standard here. That makes it a pretty hard role for you to hold. But your honor, look at that language. That language is processing, not optimization. There's never – you have to look at optimization. He never ever says, and he can't say, that Rose discloses optimization. He talks about processing every single time because the board construed that the claims require optimization of the first and second rule set before applying it to packets. And so, I mean, processing can be a number of things, but optimization is going to be actually being able to optimize that rule set, and that's why they had to point to Ganabe. So if you look at that language every single time, and I check, every single time he says it, he always says processing. He never says optimization because he can't say that. And so, this optimization, you have to look to Ganabe in order to see when this is going to occur, and every single time Ganabe talks about it, it's actually after it's being applied to packets. And so, again, it comes back to this, can the board fill this in, fill in this limitation with common sense? And Arendi and all the cases that we cited specifically say that you can't do that. You can't fill that in. And, I mean, in fact, I mean, Ganabe... Here we're talking about motivation to combine, so why is it wrong to use Ganabe's teaching on the optimization point? Because the optimization has to be prior to being applied to packets. That's the instruction the board used. Ganabe does not teach prior to being applied to packets. Well, when you combine, though, that with BROSE, I mean, you get exactly that. No, you don't, Your Honor, because if you combine them, you have... At any time, you can select a policy. You can select one. Nothing about optimization. So, at any time, you can select a policy, but that policy is not optimized until it's applied to packets. So, this is the leap that the board had to make, is that they couldn't point to anything in the references. The motivation and all that doesn't matter because they can't point to anything there. They couldn't point to anything to meet that element, and so that's why that quote that I read is that they had to specifically rely on common sense to say, well, when you're talking about post-optimization, one of Scalene Art would understand that you could do pre-optimization. So, they never... They can't point to anything because it actually teaches away from that. So, the other point that we have is this hater reference. Now, the claims also require that you need to cache packets. Hater specifically discloses, it's even in the abstract of hater, that only cache parts of the packet. You do not cache the entire packet, and nowhere in that reference does it talk about caching the packet that is required by the claim. So, for this additional reason... The caching limitation was not construed, correct? Caching was not construed. That is correct, Your Honor. Okay. All right. Thank you. All right. I just heard the buzzer, so I'd like to save the rest of my time for rebuttal unless there's questions that I could answer, Your Honor. No. That's fine. Thank you. Mr. Foster? Thank you. May it please the Court, Theodore Foster, on behalf of Apple East Cisco Systems. The evidence cited by the Board supports its conclusion of unpatentability. As the Board stated at Appendix 16, as the Court noted in the earlier argument, the Rose prior art describes adjusting rule sets at any time, which includes prior to applying rules to packets, and it reiterates this in the quote one of the judges referenced earlier, that rule sets may be, quote, revised or otherwise changed when and as desired, close quote. I would further note that the Rose reference emphasizes the need for efficiency in its paragraph 18, and that ties in with the Gulnabi reference, which improves the efficiency of rule sets using the same merging, splitting, and reordering techniques discussed in the 148 patent. The Board also noted at Appendix 17 that Centripetal's expert, Dr. Orso, conceded that those of skill in the art knew how to optimize rules in a preprocessing fashion. Thus, the combined teachings of the prior art, the combination of Rose's teaching of adjusting rules at any time, and Gulnabi's specific techniques in disclosure of optimizing rules using merging, splitting, and reordering, together render obvious the claimed preprocessing step. Regarding the caching limitation that counsel was beginning to discuss, I would note that Hayter discloses at Appendix 2096 that its caching disclosure includes caching the entirety of the header and at least one byte of the payload, which is an open-ended description that also encompasses caching the entirety of the payload, as Centripetal is now arguing its claims require. If the Court does not have any questions for me on these two issues, I would cede the remainder of my time. Well, let me ask you just one quick thing. We haven't discussed, but you offered up an alternative, which was disagreeing with the Board's claim construction, and in red, I think the answer was, in gray, that that was waived. So you haven't had a chance to respond to that waiver point. So take a minute and do that. Sure. I don't believe that argument was waived. While claim construction of the preprocessing term was an issue and the Board did issue a construction, I think there were further latent issues that remained unresolved by the Board's construction. I would point the Court to Appendix page 340, which is a page from the petitioner's reply. In the middle paragraph there, we cited to Dr. Reddy's testimony, his further testimony offered with the reply, that the 148 patent does not exclude processing packets with rule sets while logging data and then using that logging data to merge, split, or reorder rule sets, then with those newly updated, revised, optimized, and improved rule sets, processing further packets. And that's further explained by Dr. Reddy looking at Appendix page 2867, which is cited from Appendix 340. Paragraph 28, he gives a specific example of what he means and what we mean by this idea that the claim simply requires before processing of some packets, not before processing any packets ever. And I would also note that in the, I'm sorry, Judge Probst? No, I was just going to say that your argument was, your answer was sufficient. Okay. I mean, but if you want to add something, go ahead. My only other comment was that in the gray brief, Centripetal seemed to pull back from their sometimes statements that the preprocessing had to be before processing any packets ever. And if it's not before processing any packets ever, then even the specific techniques in Golnabi, which use data logging, could be used to optimize rules and then subsequently have those rules be applied to further future packets and that that would be preprocessing. Okay, thank you. Thank you. Mr. Hanna, final words? Yes, Your Honors, and thank you. Thank you for staying with me all day today. But what I didn't hear in counsel's argument is any rebuttal to the fact that the board had to apply common sense in order to meet this development. And again, I point to Appendix 17 in which the board specifically stated that they could not find that there was this pre-optimization of rules, this optimization of rules before being applied to packets, and so they had to rely on common sense there. And just to drive it home, this optimization is narrower than this processing. Processing can mean a number of things. This optimization has to be on this particular rule set. And so a disclosure of processing happening does not meet the claim limitation or the claim construction here because it specifically requires the optimization of this first and second rule set. So any disclosure in ROSE about any time selecting these policies or even adjusting, there's nothing talking about optimization. And so one skill in the art, looking at that, and they have to look to when are you going to optimize. GNABI only says to optimize after you apply it to the packets. With respect to this claim construction issue that Your Honors raised, I note that it's completely contrary to the construction that they actually offered in the underlying proceedings. On appeal, they say it's processing to occur before some packets are processed but not necessarily before a device processes any packets. In the lower proceedings, they actually argued optimizing by a network device, a first rule set, and a second rule set before the network device processes packets. And so it's contrary to the positions that they took in the lower court. And again, with regard to the hater disclosing caching of packets, again, if we just look at the abstract of hater, there's nothing that says that you're actually going to cache the entire packet. It's simply not disclosed. There was no articulated reasons in the board's decision for caching the entire packet. And so we're left with this court having nothing to analyze or review. With that, Your Honors, I'm happy to answer any further questions you have about any of these references or these decisions. Hearing none, thank you. We thank both sides, and the case is submitted.